UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

NICHOLAS BOWEN,

                    Plaintiff,

v.

THE CITY OF NEW YORK, POLICE
OFFICER DANA DAVIS, in his individual
capacity,  POLICE OFFICER ROBERT
WILLIAMS, in his individual capacity, POLICE
OFFICER FRED DAVIS, in his individual
capacity, POLICE OFFICER JOHN SMITH, in
his individual capacity,

                    Defendants.

_____

No. 14-cv-6811 (LDH) (LB)

**THIRD AMENDED COMPLAINT
AND JURY DEMAND**

     Plaintiff Nicholas Bowen, by and through his attorneys Jenner & Block LLP, for his

Third Amended Complaint hereby alleges as follows:

### <u>NATURE OF THE ACTION</u>

     1.    For more than six years, Nicholas Bowen has been repeatedly arrested and jailed

overnight because the New York City Police Department ("NYPD") erroneously listed him in its

computer system as having an outstanding bench warrant.

     2.    In November 2008, Mr. Bowen was at a public housing complex in the Bronx to

visit a friend, but was stopped and issued a citation for criminal trespass, a misdemeanor.  For the

charge, Mr. Bowen received a conditional discharge – no jail time and no probation.

     3.    In January 2009, despite Mr. Bowen's compliance with the terms of his discharge,

a warrant was erroneously issued for Mr. Bowen's appearance in Bronx Criminal Court.  He

appeared in court on February 11, 2009, and the judge vacated and expunged the bench warrant.

4.      Although the court had vacated the bench warrant, the NYPD continued to list that warrant as open in its database until April 15, 2015 – more than six years after it was vacated.

5.      During those six years, Mr. Bowen was repeatedly stopped by NYPD officers for minor reasons – riding his bicycle on a sidewalk, walking between subway cars, or being in a park at closing.  Each time, NYPD officers checked the NYPD's warrant database and then arrested Mr. Bowen on the incorrectly open warrant.  Each time, the officers failed to follow NYPD procedure that required them to check a more reliable warrant database maintained by a state-level agency.  That other database correctly showed the warrant as vacated as of February 11, 2009.

6.      NYPD officers continued to arrest Mr. Bowen on the vacated warrant even after an arraigning judge gave him a document proving that the February 2009 warrant had been cleared.  At one of his court appearances, a judge had apparently correctly anticipated that the NYPD would (again) fail to correct its computer records and would (again) stop Mr. Bowen, a fifty-seven-year-old African-American man.  In daily fear of wrongful arrest, Mr. Bowen carried that document around the City with him to show NYPD officers the next time they stopped him. While the police did, indeed, continue to stop Mr. Bowen, the document did not do its job. Repeatedly, the police arrested Mr. Bowen on the erroneous warrant even after he tried to show them the document the judge gave him.

7.      On the last of these occasions, three NYPD officers injured Mr. Bowen's shoulder, arms, and legs while he was in police custody receiving medical treatment at a local hospital.  Uniformed officers toppled Mr. Bowen off a hospital gurney, handcuffed him behind his back, and dragged him, shackled and face-down, forty-five feet across the hospital floor by

his handcuffed arms – conduct so needless and obviously cruel that a nurse intervened and made the officers stop.

8.     Once again after that arrest, the NYPD did not fix its warrant records.  Indeed, the NYPD did not correct its mistaken database even when Mr. Bowen filed this lawsuit.  It finally did so six months after Mr. Bowen filed his original complaint, and then only after the Court ordered the City to inquire into whether the open warrant was still "in the system."  In other words, even with a federal civil rights case pending for half a year, the police were still erroneously listing Mr. Bowen as a fugitive.

9.     Mr. Bowen's repeated wrongful arrests based on a vacated warrant are the result of an unconstitutional NYPD policy or practice of failing to maintain accurate warrant records, and of failing to train officers to use the necessary databases in accordance with the NYPD's stated procedures.  Public records show that New Yorkers throughout the City have been victims of these same failures by the NYPD, and that the NYPD has remained deliberately indifferent to the pattern of constitutional violations that has resulted from its database maintenance and officer training policies.

10.     Mr. Bowen seeks damages for his repeated wrongful imprisonment and his injuries, and a declaration that the NYPD's policy or practice is unconstitutional.

## JURISDICTION AND VENUE

11.     Claims in this action are brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

12.     The Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 & 1343(a), and over related state-law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

14.    Mr. Bowen resides at 902 Amsterdam Avenue, New York, New York and has been at all relevant times a resident of the City and State of New York.

15.    Defendant The City of New York ("City") was and is a municipality that is a political subdivision of the State of New York.

16.    At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel, including the individual defendants referenced herein.  In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

17.    On information and belief, at all times relevant hereto, Police Officer Dana Davis, Shield No. 31241, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

18.    On information and belief, at all times relevant hereto, Police Officer Robert Williams, Shield No. 21339, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

19.    On information and belief, at all times relevant hereto, Police Officer Fred Davis, Shield No. 15058, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

20.    On information and belief, at all times relevant hereto, Police Officer John Smith, Shield No. 30374, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

21.     At all times relevant hereto, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the City or State of New York.

22.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by the City.

23.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by the City.

**JURY DEMAND**

24.     Mr. Bowen hereby demands a trial by jury on all of his claims in this action.

**FACTUAL ALLEGATIONS**

**I.      The NYPD Warrant System**

25.     The following allegations concerning the NYPD's warrant database and policies are made on information and belief.

26.     The NYPD maintains a record of open, active warrants for field use by NYPD officers and NYPD personnel in a database known as the Automated Database for Warrants ("Automated Database").  The Automated Database is maintained separately from the warrant database used by the New York State Office of Court Administration, which is known as the Criminal Record Information and Management System ("CRIMS").

27.     It is NYPD policy that whenever NYPD officers stop an individual in New York City, they will run a check of that person's name to determine whether that person has any open warrants.

28.     The Automated Database is the primary database used by NYPD officers in the field to run this routine search when they stop an individual.  To run the search, an NYPD officer enters identifying information about the person into the Automated Database, and the Automated

Database then indicates whether it has found an open warrant for the individual's arrest.  Since the system maintains information about various types of warrants, the Automated Database shows the officer information indicating which type of warrant has been returned as open for the identified individual, such as whether it is a bench warrant related to a court proceeding, and the borough where it was issued.

29.     Apparently recognizing that the information maintained in the Automated Database is not reliable, NYPD policymakers have made it NYPD policy – through Section 208-22 of the NYPD Patrol Guide – that a hit in the Automated Database showing an open *bench* warrant indicates only a "POSSIBLE WARRANT," and is therefore "not sufficient authority for an arrest."

30.     If the Automated Database does show a hit for an open bench warrant, Section 208-22 of the Patrol Guide states that the officer must conduct a further inquiry using the CRIMS database to determine "the last status of the warrant."   Further underscoring that NYPD policymakers have recognized that the Automated Database is unreliable for showing the status of bench warrants, the NYPD Patrol Guide states that if an officer is unable to verify the warrant on CRIMS, the officer must then call the NYPD's Warrant Section and, if there remains "any doubt" about the status of the warrant, officers should verify the warrant status "directly from the court records."

31.     The NYPD maintains a Warrant Section and borough Warrants Squads, which have responsibility relating to warrants in New York City.[1]

32.     As recently as January 2016, public news sources have reported that the NYPD's records show roughly 1.5 million open arrest warrants for individuals in New York City.[2]   A

---

[1] *See Frequently Asked Questions*, New York Police Department, http://www.nyc.gov/html/nypd/html/faq/faq_police.shtml#10 (referring to Warrant Section and borough Warrants Squads for open warrant-related inquiries).

substantial portion of these warrants issued when an individual failed to appear after being issued a summons for a minor violation.[3]   A New York City public official has stated that bench warrants in particular have contributed to the overwhelming number of open warrants.[4]

## II.  Mr. Bowen's Erroneously Open Warrant

33.   On November 20, 2008, Mr. Bowen was visiting a friend in a public housing complex in the Bronx when the NYPD stopped him and issued a citation charging him with criminal trespass.  Mr. Bowen received a one-year term of conditional discharge as a result of this charge.

34.   Although this judgment was entered and resolved Mr. Bowen's case, for some reason the New York Supreme Court for Bronx County issued a bench warrant (Case No. 2008BX075233) for Mr. Bowen's arrest in connection with the charge of criminal trespass (the "Closed Warrant").

35.    Mr. Bowen was not at that time given notice of the erroneously issued bench warrant.  He found out about the warrant in February 2009, when he received a phone call from an NYPD officer who, on information and belief, is a member of the NYPD Warrant Section.

36.   Mr. Bowen appeared in court on February 11, 2009.  When Mr. Bowen appeared, the judge determined that the charge had already been resolved and Mr. Bowen had been conditionally discharged, and recognized that the warrant never should have been issued.

[2]  *See* Michael Gartland & Bob Fredericks, *Mark-Viverito continues push to decriminalize quality-of-life offenses*, N.Y. Post (Jan. 26, 2016, 1:21 AM), http://nypost.com/2016/01/26/mark-viverito-continues-push-to-decriminalize-quality-of-life-offenses/.

[3]  *See* Allegra Kirkland, *How New York Ended up With 1.2 Million Open Arrest Warrants*, TalkingPointsMemo.com (Aug. 4, 2015), http://talkingpointsmemo.com/theslice/new-york-broken-windows-arrest-warrants-begin-again.

[4] *See* Rosa Goldensohn, *Brooklyn DA Offers Chance to Wipe Out New Yorkers' Open Summons Warrants*, DNAinfo (Sept. 1, 2015, 1:27 PM), https://www.dnainfo.com/new-york/20150901/downtown-brooklyn/brooklyn-da-offers-chance-wipe-out-new-yorkers-open-summons-warrants.

Specifically, the judge stated that "it actually looks like judgment was actually entered on the surcharge.  For some reason a warrant was ordered at the same time."  The judge therefore vacated and expunged the warrant without objection by the assistant district attorney.

37.    Once the judge had vacated the bench warrant, on or about that same day, the Closed Warrant was marked in the CRIMS database maintained by the Office of Court Administration as being closed.  It was not, however, vacated from the Automated Database, which continued to show it as an open warrant for more than six years, until April 15, 2015.

## III.    The NYPD's Repeated Arrests of Mr. Bowen Based on the Closed Warrant

### A.    The First Wrongful Arrest

38.    At some point between February 11, 2009, and November 13, 2010, Mr. Bowen was stopped by NYPD officers for riding his bike on the sidewalk on the way out of a public housing complex parking lot in or around the intersection of Euclid Avenue and Linden Boulevard in Brooklyn.  The officers asked for his identification, which he gave.

39.    On information and belief, the officers then ran Mr. Bowen's name and identifying information through the Automated Database, which indicated that the Closed Warrant was still open.

40.    On information and belief, the officers did not then run Mr. Bowen's name through the CRIMS database, nor did they take any other actions to verify whether the Closed Warrant was open.

41.    Relying solely on the erroneous information in the Automated Database, the officers arrested Mr. Bowen.  They transported him to the Kings County Criminal Courthouse and then to Rikers Island, where he spent several days pending appearance on the Closed Warrant.

42.     Mr. Bowen was later transported to the Bronx Criminal Courthouse.  There, an officer Mr. Bowen believed to be a captain released Mr. Bowen from his holding cell without handcuffing him.  The officer directed Mr. Bowen to proceed through a door in the holding area.  After Mr. Bowen went through the door, he found himself unaccompanied in the general public area of the courthouse.  He never received an explanation for his release from custody, and was released without making an appearance before a judge.

43.     On information and belief, though Mr. Bowen received no explanation for his release from custody, one or more members of the NYPD had learned that the Closed Warrant had already been closed.

44.     On information and belief, the NYPD took no action to update the Automated Database following the recognition by one or more officers that the database still erroneously listed the Closed Warrant as being open.

**B.      The Second Wrongful Arrest**

45.     On November 13, 2010, Mr. Bowen was stopped by NYPD officers on suspicion of having an open container of alcohol – an offense carrying a $25 mail-in fine.  The officers asked for his identification.

46.     On information and belief, the officers then ran Mr. Bowen's name and identifying information through the Automated Database, which indicated that the Closed Warrant was still open.

47.     Mr. Bowen told the NYPD officers that he did not have an outstanding bench warrant.  But, on information and belief, the officers did not then run Mr. Bowen's name through the CRIMS database, nor did they take any other actions to verify whether the Closed Warrant was open.

48.     Relying solely on the erroneous information in the Automated Database, the officers arrested Mr. Bowen and he remained in custody overnight.

49.     The following day, November 14, 2010, Mr. Bowen appeared in Kings County Criminal Court.  The court determined that the case associated with the Closed Warrant had been dismissed and the warrant vacated.

50.     Mr. Bowen was also charged with a violation of N.Y.C. Administrative Code § 10-125, which prohibits consumption of alcohol on city streets.  Proceedings on this charge were adjourned in contemplation of dismissal, and ultimately dismissed on May 13, 2011.[5]

51.     The judge presiding over Mr. Bowen's court appearance gave him a document stating that the Closed Warrant was, in fact, closed and told Mr. Bowen to present this paper to NYPD officers if they attempted to arrest him on the basis of the Closed Warrant in the future.

52.     On information and belief, at least one NYPD officer was present at the November 14, 2010 proceeding.

53.     On information and belief, the NYPD took no action to update the Automated Database following this proceeding.

**C.     The Third Wrongful Arrest**

54.     On September 2, 2012, Mr. Bowen was in a public park in Brooklyn at the park's closing time when he was stopped by NYPD officers.  The officers asked Mr. Bowen for identification, which he provided.

---

[5] This charge was not the basis for Mr. Bowen's arrest.  The NYPD Omniform Arrest Record of Mr. Bowen's November 13, 2010 arrest does not list any charges underlying that arrest, and the "Description" section references the warrant for case number 2008BX075233 – *i.e.*, the Closed Warrant.  Further, at the time of the arrest, New York City had a "plea by mail program" permitting officers to issue a summons for consuming alcohol on public streets, which would be satisfied when the summonsed individual paid a $25 fine by mail.

55.     On information and belief, the officers then ran Mr. Bowen's name and identifying information through the Automated Database, which indicated that the Closed Warrant was still open.

56.     Mr. Bowen told the officers that he did not have an outstanding bench warrant and also attempted to show the officers the paper given to him by the Kings County judge indicating that the Closed Warrant was closed.  The officers refused to consider the paper or Mr. Bowen's explanation.  On information and belief, the officers also did not then run Mr. Bowen's name through the CRIMS database, nor did he take any other actions to verify whether the Closed Warrant was open.

57.     Relying solely on the erroneous information in the Automated Database, the officers arrested Mr. Bowen and caused him to be held overnight.

58.     The following day, September 3, 2012, Mr. Bowen appeared in Kings County Criminal Court.  The court determined that the case associated with the Closed Warrant had been dismissed and the warrant vacated.

59.     Mr. Bowen was arraigned on charges of being in a park outside of operating hours, in violation of N.Y. Park Rules and Regulations § 1-03(a).  The charges were adjourned in contemplation of dismissal at Mr. Bowen's arraignment, and ultimately dismissed on March 1, 2013.[6]

60.     On information and belief, at least one NYPD officer was present at the September 3, 2012 proceeding.

---

[6] This charge was not the basis for Mr. Bowen's arrest.  The NYPD Omniform Arrest Record of Mr. Bowen's September 2, 2012 arrest states that Mr. Bowen "was found to have an active warrant docket number 2008BX075233," and further states, "DAT denied due to warrant."  On information and belief, "DAT" stands for "Desk Appearance Ticket," indicating that Mr. Bowen was placed under custodial arrest only because of the erroneous indication that the Closed Warrant was open.

61.    On information and belief, the NYPD took no action to update the Automated Database following this proceeding.

**D.    The Fourth Wrongful Arrest**

62.    On July 17, 2013, Mr. Bowen and a companion were traveling on an 'A' subway train when they and several other passengers moved between subway cars because the air conditioning was not working in the car they boarded, such that – because the City was experiencing a serious heat wave – the condition in the car justified leaving the car by traveling between cars.  When the train arrived at the Hoyt/Schermerhorn Station, four NYPD officers, including Defendant Officer Dana Davis, approached Mr. Bowen and the other passengers who had moved between the subway cars, detained them, and asked for identification.

63.    On information and belief, the officers then ran Mr. Bowen's name and identifying information through the Automated Database, which indicated that the Closed Warrant was still open.

64.    Mr. Bowen told Officer Dana Davis that he did not have an outstanding bench warrant and also attempted to show Officer Dana Davis the paper given to him by the Kings County judge indicating that the Closed Warrant was closed.  Officer Dana Davis refused to consider the paper given to Mr. Bowen by the judge, or Mr. Bowen's explanation.  On information and belief, Officer Dana Davis also did not then run Mr. Bowen's name through the CRIMS database, nor did he take any other actions to verify whether the Closed Warrant was open.

65.    Relying solely on the erroneous information in the Automated Database, Officer Dana Davis arrested Mr. Bowen.  The NYPD officers permitted the other individuals who had been detained for moving between subway cars to leave.

12

66.     That Officer Dana Davis refused to consider the court-issued paper caused Mr. Bowen's companion to become upset and confront Officer Dana Davis.  She was placed under arrest as well.

67.     Mr. Bowen spent the night in jail and was subject to excessive force following this arrest, as described in the next section of this Third Amended Complaint.

68.     At the station, Mr. Bowen attempted to show the desk officer and the on-duty commanding officer the court document indicating that the Closed Warrant was closed, but the officers said that they would not consider it.

69.     When he appeared in Kings County Criminal Court the day after his arrest, Mr. Bowen's attorney showed the presiding judge the piece of paper that Mr. Bowen had attempted to show the officers, and explained that Mr. Bowen was told "to walk with that [paper] and he does to the point where it's falling apart."  After a short recess, the Court stated:  "[W]e have had the clerk check into this matter for the cross county matter and it does say that the cross county matter, the warrant is no longer an active warrant, and it has been taken care of.  So hopefully, Mr. Bowen, this will fully take care of it.  But, again, just for your own safety and purposes carry that [paper] around with you."

70.     During these proceedings, Mr. Bowen was arraigned on a charge of moving between subway cars, but that charge was adjourned in contemplation of dismissal and was ultimately dismissed on January 17, 2014.[7]

71.     On information and belief, at least one NYPD officer was present at the July 18, 2013 proceeding.

_____

[7] This charge was not the basis for Mr. Bowen's arrest.  The New York Unified Court System "WebCrims" case information summary resulting from this case indicates that an alleged violation Administrative Code § 1050.9, which prohibits moving between subway cars, is "[n]ot an arrest charge."

72.     On information and belief, the NYPD took no action to update the Automated Database following this proceeding.

**IV.     Excessive Force Against Mr. Bowen**

73.     Mr. Bowen was subject to unlawful excessive force in connection with the fourth unlawful arrest described above.

74.     On the day of that incident, Mr. Bowen and a companion were transported to the police precinct, where they were held for several hours.

75.     As part of routine booking procedure, officers asked Mr. Bowen whether he needed any medical attention.  Mr. Bowen indicated that he needed medication.

76.     Defendant Officer Robert Williams and a second officer then transported Mr. Bowen to New York Methodist Hospital, located at 506 Sixth Street in Brooklyn.  Mr. Bowen's companion was taken to the hospital as well.

77.     Mr. Bowen was placed in leg shackles and remained shackled throughout the time he was at New York Methodist Hospital.

78.     At New York Methodist Hospital, Mr. Bowen was placed in a hospital bed and first visited for initial triage at or around 4:30 a.m. on July 18, 2013.  He was not then discharged, and remained in the hospital bed awaiting further treatment.

79.     After some period of waiting for further treatment, Mr. Bowen fell asleep.  Some time after that, he was awoken by Officer Williams, who informed Mr. Bowen that he was being discharged from the hospital.  Mr. Bowen told Officer Williams that he had not yet seen the doctor.

80.     Officer Williams then stated, in sum and substance, that a doctor had returned and given Mr. Bowen an injection while he was sleeping.  Mr. Bowen stated that if what Officer

Williams told him was true, he needed to see the doctor again in order to determine what he had been injected with, in case he had an allergy.

81.     Officer Williams then told Mr. Bowen, in sum and substance, "We can leave the easy way, or the hard way."  Mr. Bowen, hoping to protect himself by attracting attention to Officer Williams' statement, loudly asked, "What do you mean by 'the easy way or the hard way?'"

82.     Officer Williams and a second officer then proceeded to grab Mr. Bowen and attempted to forcibly remove him from the hospital gurney.  The officers caused the gurney to tip over and Mr. Bowen fell to the floor.  When Mr. Bowen was on the floor, one of the officers took hold of Mr. Bowen's arm behind Mr. Bowen's back in order to keep him on the floor, while another officer placed his foot on Mr. Bowen's neck.  The officers restrained Mr. Bowen so forcefully that he had trouble breathing.

83.     While Mr. Bowen was restrained, Officer Williams handcuffed Mr. Bowen behind his back.  Then, without attempting to help Mr. Bowen off of the ground or permitting Mr. Bowen to get to his feet, and without any provocation, Officer Williams began to drag Mr. Bowen from behind, by the arms, through the hospital and toward the door.  This caused extreme pain to Mr. Bowen and injury to Mr. Bowen's shoulder, as well as scrapes on his leg.

84.     After Officer Williams had dragged Mr. Bowen at least 45 feet across the floor in this manner, a nurse at the hospital intervened and demanded that the officers place Mr. Bowen in a wheelchair.  Upon arrival at the squad car that would be used to transport Mr. Bowen back to the police precinct, officers dumped Mr. Bowen out of the wheelchair and on to the ground.

85.     On information and belief, Officer John Smith and Officer Fred Davis participated in forcibly restraining and transporting Mr. Bowen in the above manner.

86.     The injuries Mr. Bowen sustained to his arm and shoulder as a result of the NYPD officers' actions persist to this day.

87.     After spending the remainder of that night and the morning in police custody, Mr. Bowen was transported to Kings County Criminal Court.   There, the same scenario that had played out during his previous arrests on the Closed Warrant repeated itself, as described above.

**V.     The Closed Warrant is Finally Cleared from the Automated Database**

88.     On October 9, 2013, Mr. Bowen filed a notice of claim with the City of New York that included allegations that he had been arrested without probable cause on July 17, 2013, and had been subject to excessive force after that arrest.   In response, the City noticed a hearing under Rule 50-H of the New York City General Municipal Law.   That hearing was held on November 19, 2013.   During that hearing, Mr. Bowen explained that he had been arrested on the Closed Warrant multiple times, and that he had tried to present officers with the judicially issued paper indicating that the warrant was vacated.   The City took no action to investigate the status of Mr. Bowen's warrant in response to his testimony at the Rule 50-H hearing, and the Closed Warrant was not corrected in the Automated Database at that time.

89.     Mr. Bowen first filed a complaint in this matter on October 15, 2014.

90.     On April 15, 2015, the Court ordered the City to inquire whether the Closed Warrant was still showing as open in the system.   *See* Dkt. No. 22 at 2.

91.     That same day, Detective John Sabino of the NYPD's Warrant Section ran a search of CRIMS – the database maintained by the New York Office of Court Administration – for information associated with Case No. 2008BX075233 at the request of the New York City Law Department.   This search is described in a sworn affidavit signed by Detective Sabino on April 20, 2015, and filed by Defendants with the Court on April 29, 2015.   *See* Dkt. No. 27-1, ¶ 3.

92.     Detective Sabino's search confirmed that the Closed Warrant had been vacated on February 11, 2009.

93.     After discovering that the warrant was vacated on the CRIMS database, Detective Sabino finally cancelled the warrant in the Automated Database.

94.     In addition to the four arrests described above, Mr. Bowen was arrested by NYPD officers on at least two other occasions between February 11, 2009, and the date the Closed Warrant was cleared from the Automated Database on April 15, 2015.  Further investigation and fact discovery may show that these arrests would not have taken place but for the erroneous information about the Closed Warrant in the Automated Database.

**VI.     The Closed Warrant's Constraint on Mr. Bowen's Liberty**

95.     As a result of Mr. Bowen's repeated arrests on the vacated warrant and the NYPD's repeated failure to correct its warrant records, Mr. Bowen was deprived of the basic liberty of being free from the constant threat of arbitrary, unlawful arrest.  The ever-present risk of being stopped and arrested without process or cause, including based on his repeated experiences being arrested based on the vacated warrant, affected Mr. Bowen's daily decisions about whether and when to be in public.  As a result, even when not incarcerated, he never felt free.

**VII.     The NYPD's Policies or Practices Regarding Erroneously Open Warrants**

96.     NYPD officers routinely make arrests based on the existence of a "hit" for a bench warrant in the Automated Database alone, without taking any further steps to determine the warrant is actually open, including checking CRIMS.

97.     This practice violates NYPD policy as stated in the NYPD Patrol Guide, which, on information and belief, was drafted by NYPD policymakers in recognition of the fact that the

Automated Database is not a reliable source of open warrant information concerning bench warrants.

98.     On information and belief, this practice persists because the NYPD has failed to adequately train NYPD officers that they should not arrest New Yorkers based solely on information contained in the Automated Database concerning bench warrants, and has failed to train NYPD officers concerning procedures for how to determine the existence of an open bench warrant.

99.     Further, the NYPD has repeatedly been made aware that NYPD officers have a practice of arresting individuals based solely on incorrect information in the Automated Database.  In Mr. Bowen's case alone, as described above, numerous NYPD officers learned in connection with Mr. Bowen's numerous arrests that the information in the Automated Database provided an incorrect basis for his arrest.[8]

100.     In recent years, moreover, several lawsuits have been brought alleging arrests based on erroneous information about bench warrants.  Several of these included allegations that the arrestee had been given a piece of paper – like the one given to Mr. Bowen – to prove to NYPD officers that an erroneously listed bench warrant had been cleared.  The City settled nearly all of these cases.  These cases involved numerous police officers throughout the City over a multi-year period.

101.     In spite of these cases publicly alleging arrests based on erroneous information in the NYPD's warrant database, on information and belief, the NYPD has not taken any steps to ensure that closed warrants do not appear as open in the Automated Database, such as

---

[8] Officials employed by Defendant City of New York were also put on notice that Mr. Bowen had repeatedly been arrested on the same cleared warrant at the Rule 50-H hearing conducted after Mr. Bowen filed his notice of claim preceding this action.  No one corrected the erroneous information in the Automated Database until after this federal court proceeding was filed.

investigating claims of error, or updating information known to be incorrect in its system.  Nor, as alleged above, has the NYPD adequately trained NYPD officers to determine whether a warrant is, in fact, open.

102.   Problems with the NYPD's warrant system have recently been the focus of press attention.   The New York Daily News reported that low-level offenses had contributed to the existence of the 1.5 million open warrants, and that 38% of those warrants were bench warrants issued after an individual had failed to show up in court.  The sheer number of warrants increases the risk of errors and makes it imperative that NYPD officers are properly trained.

103.   Recently, high-level public officials have also focused on the NYPD's warrant practices.  On January 25, 2016, the New York City Council introduced a package of bills, backed by the Office of the Mayor, allowing police officers to impose civil penalties for low-level offenses instead of criminal penalties.  That legislation apparently came out of "nearly a year of talks between the Council, City Hall and the NYPD."[9]

## VIII.   Notice of Claim

104.   As noted above, Mr. Bowen filed a sworn notice of claim within 90 days of his July 17, 2013 wrongful arrest and the occurrence of excessive force against him.  This notice was filed with the City of New York on October 9, 2013.  *See* Dkt. No. 2-3.

105.   Mr. Bowen was served with a notice of hearing under Rule 50-H of the New York City General Municipal Law on November 19, 2013.

106.   Mr. Bowen appeared for a Rule 50-H hearing on May 8, 2014, at the offices of Shapiro & Beilly, LLP in New York, New York.

---

[9]  Erin Durkin, *De Blasio's office backs Council bills that would cut back criminal penalties for minor offenses like public urination, littering*, N.Y. Daily News (Jan. 25, 2016, 3:51 PM), *available at* http://www.nydailynews.com/news/politics/council-bills-cut-back-penalties-minor-offenses-article-1.2508895.

107.   This lawsuit was filed within one year and 90 days after Mr. Bowen's fourth wrongful arrest and the occurrence of excessive force against him.

## FIRST CAUSE OF ACTION (FAILURE TO TRAIN)

**Violation of Plaintiff's Fourth and Fourteenth Amendment Rights Under
42 U.S.C. § 1983 Based on Plaintiff's Arrest Without a Warrant or Probable Cause
Against Defendant The City of New York**

108.   Mr. Bowen hereby incorporates by reference the allegations of Paragraphs 1-107 of this Third Amended Complaint as if fully set forth herein.

109.   At all relevant times, the City, including through the NYPD, was acting under color of state law.

110.   Mr. Bowen was arrested without a warrant or probable cause on at least four occasions between February 11, 2009, and April 15, 2015.  The warrant that was the basis of his arrest on those occasions had already been vacated and was not valid for his arrest.

111.   The City has an ongoing unconstitutional policy, custom, pattern, and practice of failing to adequately train NYPD officers to avoid making unlawful arrests when there is in fact no active warrant, as described herein.  The City has failed to train officers that the Automated Database is not a valid basis for an arrest, that officers must cross-check the CRIMS database or court records to make an arrest on an open bench warrant, and that any doubt concerning whether a bench warrant is open should be resolved by using court records.

112.   The City has an ongoing unconstitutional policy, custom, pattern, and practice of failing to adequately supervise NYPD officers with respect to arrests made on bench warrants.

113.   The policies, customs, patterns, and practices of the City were a proximate cause and/or moving force behind Mr. Bowen's wrongful arrest on each of the four occasions described herein.

114.    The City was aware that its failure to train officers in this manner would lead to the deprivation of Mr. Bowen's and other citizens' constitutional rights.

115.    The City was further aware to a moral certainty that NYPD officers would run warrant checks on citizens, and that the Automated Database would show warrant "hits" when in fact the underlying warrant had been vacated in the past.

116.    The City was aware that officers regularly made arrests on these invalid warrants.

117.    The City's failure to adequately train officers to make legal arrests on bench warrants is a result of this deliberate indifference.

118.    In maintaining this policy or practice, the City has been deliberately indifferent to the constitutional rights of New Yorkers, including Mr. Bowen.

119.    As a direct and proximate result of the City's unconstitutional policy or practice, Mr. Bowen suffered damages in an amount to be determined at trial, including without limitation for deprivation of his liberty, including multiple nights in custody, and emotional injuries.

## SECOND CAUSE OF ACTION (POLICY AND/OR WIDESPREAD PRACTICE)

**Violation of Plaintiff's Fourth and Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based on Mr. Bowen's Arrest Without a Warrant or Probable Cause Against Defendant The City of New York**

120.    Mr. Bowen hereby incorporates by reference the allegations of Paragraphs 1-107 of this Third Amended Complaint as if fully set forth herein.

121.    At all relevant times, the City, including through the NYPD, was acting under color of state law.

122.    Mr. Bowen was arrested without a warrant or probable cause on at least four occasions between February 11, 2009, and April 15, 2015.  The warrant that was the basis of his arrest on those occasions had already been vacated and was not valid for his arrest.

123.    The City has an ongoing unconstitutional policy, custom, pattern, and practice of tolerating arrests by its officers based on vacated bench warrants.   This policy includes permitting NYPD officers to rely solely on the Automated Database to arrest New Yorkers for open bench warrants, and not requiring NYPD personnel to update or correct known errors in the Automated Database, as described herein.

124.    The ongoing policies, customs, patterns, and practices of the City were the proximate cause and/or moving force behind Mr. Bowen's wrongful arrest on each of the four occasions that Mr. Bowen was arrested, as described herein.

125.    This unconstitutional policy or practice is known to and either explicitly or tacitly approved by policymakers within the City and is a persistent and widespread custom and practice of the City.

126.    In maintaining this policy or practice, the City has been deliberately indifferent to the constitutional rights of New Yorkers such as Mr. Bowen.

127.    As a direct and proximate result of the City's unconstitutional policy or practice, Mr. Bowen suffered damages in an amount to be determined at trial, including without limitation for deprivation of his liberty, including multiple nights in custody, and emotional injuries.

**THIRD CAUSE OF ACTION (RECKLESS OR MALICIOUS INDIFFERENCE TO EVIDENCE THAT THE WARRANT WAS VACATED)**

**Violation of Plaintiff's Fourth and Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based on Reckless and Malicious Indifference to the Closure of the Vacated Warrant Against Defendant The City of New York**

128.    Mr. Bowen hereby incorporates by reference the allegations of Paragraphs 1-107 of this Third Amended Complaint as if fully set forth herein.

129.    At all relevant times, the City, including through the NYPD, was acting under color of state law.

130.    On each of the occasions on which Mr. Bowen was arrested in connection with the vacated warrant, NYPD personnel – including the arresting officers and officers at the station – demonstrated reckless and malicious indifference to Mr. Bowen's claims of innocence, including his attempt to show the document from the Kings County judge.  By failing to take the readily available step of confirming that the warrant was open in the CRIMS database, the NYPD acted with deliberate indifference to Mr. Bowen's constitutional rights.

131.    The City has an ongoing unconstitutional policy, custom, pattern, and practice of failing to take the readily available step of investigating whether a warrant is in fact closed in the face of an arrestee's protestations of innocence and/or of disregarding evidence that a warrant is in fact closed.

132.    The ongoing policies, customs, patterns, and practices of the City were the proximate cause and/or moving force behind the unconstitutional deprivation of Mr. Bowen's liberty.

133.    These unconstitutional policies or practices are known to and either explicitly or tacitly approved by policymakers within the City and constitute a persistent and widespread custom and practice of the City.

134.    In maintaining these policies or practices, the City has been deliberately indifferent to the constitutional rights of New Yorkers such as Mr. Bowen.

135.    As a direct and proximate result of the City's unconstitutional policies or practices, Mr. Bowen suffered damages in an amount to be determined at trial, including without limitation for deprivation of his liberty and emotional injuries.

## FOURTH CAUSE OF ACTION (VIOLATION OF DUE PROCESS RIGHTS)

**Violation of Plaintiff's Fourteenth Amendment Rights Under 42 U.S.C. § 1983 for Deprivation of Liberty Without Due Process Against Defendant The City of New York**

136.    Mr. Bowen hereby incorporates by reference the allegations of Paragraphs 1-107 of this Third Amended Complaint as if fully set forth herein.

137.    At all relevant times, the City, including through the NYPD, was acting under color of state law.

138.    Between February 11, 2009, and April 15, 2015, the City reflected as "open" in its database system a vacated warrant for Mr. Bowen's arrest.  As a result, Mr. Bowen was subject to being deprived of his liberty without due process of law at any time during that period, and forced to carry a paper in an attempt to prove that he should not be arrested without the benefit of process.  The presumption that he should not be deprived of his liberty without due process was thus reversed for Mr. Bowen.

139.    The City has an ongoing unconstitutional policy, custom, pattern, and practice of failing to maintain an accurate warrant database, including failing to update vacated warrants.

140.    The ongoing policies, customs, patterns, and practices of the City were the proximate cause and/or moving force behind the deprivation of Mr. Bowen's liberty without due process of law.

141.    These unconstitutional policies or practices are known to and either explicitly or tacitly approved by policymakers within the City and constitute a persistent and widespread custom and practice of the City.

142.    In maintaining these policies or practices, the City has been deliberately indifferent to the constitutional rights of New Yorkers such as Mr. Bowen.

143.    As a direct and proximate result of the City's unconstitutional policies or practices, Mr. Bowen suffered damages in an amount to be determined at trial, including without limitation for deprivation of his liberty and emotional injuries.

## FIFTH CAUSE OF ACTION (WRONGFUL ARREST)

**Violation of Plaintiff's Fourth and Fourteenth Amendment Rights Under 42 U.S.C. § 1983 for Wrongful Arrest Against Defendants Officer Dana Davis**

144.    Mr. Bowen hereby incorporates by reference the allegations of Paragraphs 1-107 of this Third Amended Complaint as if fully set forth herein.

145.    At all times, Officer Dana Davis, the officer who arrested Mr. Bowen on July 17, 2013, acted under color of state law.

146.    On the date of the subject arrest, Officer Dana Davis intended to and did confine Mr. Bowen against his will.

147.    Mr. Bowen was conscious of this confinement.

148.    Mr. Bowen did not consent to this confinement.

149.    This confinement was not legally privileged.

150.    Officer Dana Davis did not have a valid warrant to arrest Mr. Bowen.

151.    Officer Dana Davis did not have probable cause to arrest Mr. Bowen.

152.    All charges against Mr. Bowen were dismissed.

153.    Officer Dana Davis did not take these actions in good faith.  Mr. Bowen's constitutional right to be free from unlawful confinement was clearly established at the time of the subject arrests, and Officers Dana Davis's actions in arresting Mr. Bowen without a warrant and without probable cause were objectively unreasonable.

154.    As a direct and proximate result of these unlawful arrests, Mr. Bowen suffered damages in an amount to be determined at trial, including without limitation deprivation of liberty and emotional damages.

## SIXTH CAUSE OF ACTION (EXCESSIVE FORCE)

**Violation of Plaintiff's Fourth and Fourteenth Amendment Rights Under 42 U.S.C. § 1983 for Use of Excessive Force Against Defendants Officers Robert Williams, Fred Davis, and John Smith**

155.    Mr. Bowen hereby incorporates by reference the allegations of Paragraphs 1-107 of this Third Amended Complaint as if fully set forth herein.

156.    At all relevant times, Officers Robert Williams, Fred Davis, and John Smith, the officers who arrested, supervised, transported, and accompanied Mr. Bowen, acted under color of state law.

157.    On July 17 and 18, 2013, while present at the Hospital with Mr. Bowen, Officers Williams, Fred Davis, and John Smith used unnecessary and excessive force against Mr. Bowen, as described herein.

158.    This excessive force was wholly unjustified.

159.    Officers Williams, Fred Davis, and John Smith did not actually or reasonably fear that Mr. Bowen presented an imminent and serious threat to their or any other person's well-being, or believe that the force that was used was reasonably necessary to effect a lawful arrest.

160.    This excessive force violated the Fourth and Fourteenth Amendments to the United States Constitution.

161.    Officers Williams', Fred Davis', and John Smith's actions violated clearly established law.

162.    As a direct and proximate result of this excessive force, Mr. Bowen suffered damages in an amount to be determined at trial, including without limitation physical and emotional injuries.

## SEVENTH CAUSE OF ACTION (NEW YORK STATE FALSE ARREST)

### New York State Law Unlawful Arrest Against Defendants Officer Dana Davis and The City of New York

163.    Mr. Bowen hereby incorporates by reference the allegations of Paragraphs 1-107 of this Third Amended Complaint as if fully set forth herein.

164.    On July 17, 2013, Officer Dana Davis intended to and did confine Mr. Bowen against his will.  On each of the previous occasions that he was arrested on the Closed Warrant, the arresting officer intended to and did confine Mr. Bowen against his will.

165.    Mr. Bowen was conscious of this confinement.

166.    Mr. Bowen did not consent to this confinement.

167.    This confinement was not legally privileged.

168.    Neither Officer Dana Davis nor any of the individual officers who arrested Mr. Bowen on previous dates had a valid warrant to arrest Mr. Bowen.

169.    Neither Officer Dana Davis nor any of the individual officers who arrested Mr. Bowen on previous dates had probable cause to arrest Mr. Bowen.

170.    All criminal charges against Mr. Bowen connected with these arrests were dismissed.

171.    At all relevant times, Officer Dana Davis and the other arresting officers were employees of the City and acting with the scope of their employment.  The City is therefore liable to Mr. Bowen under the doctrine of *respondeat superior*.

172.    As a direct and proximate result of these unlawful arrests, Mr. Bowen suffered damages in an amount to be determined at trial, including without limitation deprivation of liberty and emotional damages.

## EIGHTH CAUSE OF ACTION
## (NEW YORK STATE ASSAULT AND BATTERY)

**Assault and Battery Under New York Law Against Defendants Officers Robert Williams, Fred Davis, John Smith, and The City of New York**

173.    Mr. Bowen hereby incorporates by reference the allegations of Paragraphs 1-107 of this Third Amended Complaint as if fully set forth herein.

174.    On July 17 and 18, 2013, the above-named NYPD officers intentionally made bodily contact with Mr. Bowen with excessive force, as described herein.

175.    At the time the above-named NYPD officers used such force against Mr. Bowen, Mr. Bowen was already under arrest, and was not resisting arrest or attempting to escape.

176.    The use of force by the above-named NYPD officers was not privileged, including because the above-named defendants did not reasonably believe that Mr. Bowen was resisting arrest or attempting to escape, nor did they reasonably believe that Mr. Bowen posed a danger to their or any other person's wellbeing.

177.    The amount of force used by the above-named NYPD officers was excessive, and not reasonably necessary to arrest Mr. Bowen, prevent Mr. Bowen's escape, or protect themselves or others.

178.    At all relevant times, the above-named NYPD officers were employees of the City and acting within the scope of their employment.  The City therefore liable to Mr. Bowen for the battery committed by its officers through the doctrine of *respondeat superior*.

179.    As a direct and proximate result of this assault and battery, Mr. Bowen has suffered damages in an amount to be determined at trial, including without limitation physical and emotional injuries.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a.      Compensatory damages in an amount to be determined at trial;

b.      Punitive damages in an amount to be determined at trial;

c.      A declaration that the policies and practices described herein are unconstitutional;

d.      Such injunctive or other equitable relief as the court deems appropriate;

e.      Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

f.      Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

JENNER & BLOCK LLP

By:   ___s/ Michael W. Ross_____
Michael W. Ross
Elizabeth A. Edmondson
Jenner & Block LLP
919 Third Avenue
38th Floor
New York, NY 10022
212-891-1600
212-891-1699 (fax)
mross@jenner.com
eedmondson@jenner.com

Attorneys for Nicholas Bowen

DATED:  August 24, 2016